No. 51,857

STATE OF KANSAS, *Appellee,* v. JOE SHOEMAKE, *Appellant.*

(618 P.2d 1201)

Opinion filed November 1, 1980.

*David R. McLain,* of Kansas City, argued the cause and was on the brief for the appellant.

*John J. McNally,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action from convictions of three counts of aggravated robbery (K.S.A. 21-3427) and two counts of felony theft involving two automobiles (K.S.A. 1979 Supp. 21-3701). The facts in the case are undisputed and essentially are as follows: Some time during the night of August 21, 1979, a yellow 1972 Ford Torino was stolen from a residence in Kansas City, Missouri. On August 25, 1979, a green 1972 Ford Torino was stolen from a parking lot in Wyandotte County. Around 7:00 p.m. on August 25, John Lucas was seen by an employee of Nigro's Supermarket driving a yellow Torino through the parking lot of the supermarket in Kansas City, Kansas. Shortly thereafter, Lucas was seen sitting in front of the supermarket in a green Torino. Lucas subsequently entered the supermarket, approached the manager, brandished a pistol, and

demanded money. The manager delivered money from one cash register to Lucas, who then took money by force from another store cashier at a different cash register. The manager was then forced into the store's office and more money was taken there. The monies were placed in a sack provided by a carry-out boy who had earlier seen Lucas in the yellow Ford. Lucas thereupon left the store and drove away in a green Torino. The store's employees gave accurate descriptions of both the yellow and green Torinos and all positively identified Lucas as the robber. In addition, two store customers identified Lucas as the robber.

A Kansas City police officer, having received a police dispatch description of both automobiles, attempted to stop a yellow Ford Torino matching the description. The automobile failed to respond to the officer's red light and siren, and a ten-minute, high-speed chase ensued. The chase ended when the yellow Torino collided with some parked cars and became disabled with a flat tire. Defendant Shoemake was the driver of the vehicle. John Lucas was the only passenger. In the car the police found currency, food coupons, receipts, and checks payable to Nigro's on the floorboard on both the driver's and passenger's side. A pistol was found under the driver's seat. In the rear of the car, the police found a slidehammer, an instrument used in automobile body work and frequently used by car thieves to remove ignitions. An ignition was still attached to the slidehammer. The key to the yellow Torino operated the attached ignition. The green Torino was found two blocks from Nigro Supermarket with the engine still running. Both cars, when recovered, were without their ignition switches and could be started without keys. Shoemake and Lucas were charged as codefendants on two counts of felony theft involving the yellow and green Ford Torinos and three counts of aggravated robbery of three persons at the Nigro Supermarket. The cases were severed for trial. On November 16, 1979, a jury found defendant Shoemake guilty on all five counts. The defendant appealed.

The defendant's first point is that the trial court erred in admitting into evidence photographs of the currency and other property recovered from the yellow Ford Torino. In support of his position, the defendant maintains that the foundation for the admission of the photographs was insufficient because it failed to comply with K.S.A. 1979 Supp. 60-472 which provides for the

admissibility of photographs of property taken in a criminal prosecution for theft where the property is returned to the owner. That statute provides in substance that the photograph shall bear a written description of the property alleged to have been wrongfully taken, the name of the owner of the property taken, the location where the alleged wrongful taking occurred, the name of the arresting law enforcement officer, the date the photographs were taken, and the name of the photographer. The statute requires that the writing shall be made under oath by the arresting law enforcement officer and the photograph identified by the signature of the photographer. Defendant claims that the foundation for admission of the photograph was insufficient under the statute because the photograph bore only the case file number and the photographer did not testify that the currency pictured was the currency recovered from the vehicle. We have concluded that the point is without merit. The 1979 version of the statute was, by its term, applicable only in theft cases. While the 1980 version now includes all property which is wrongfully taken and not just property taken in theft, the 1980 amendment was not applicable when the theft occurred. In our judgment, however, the foundation was more than sufficient to identify the currency and other property depicted as that taken from Nigro Supermarket and recovered in the automobile. One police officer testified that he had removed the items from the yellow Torino and that, in making his report, he listed each bill by denomination and serial number. He identified the photograph of the currency as accurately depicting the currency he recovered by comparing the serial numbers revealed in the photographs with the serial numbers listed on his report. Another police officer testified that he was present when the photograph was taken and that the case number was included in the photograph and corresponded with the number on the case file. We have held on a number of occasions that photographs are admissible upon proper foundation and identification if they accurately represent matters relevant to the issues in the case. *State v. Hollaway,* 214 Kan. 636, 639, 522 P.2d 364 (1974). In *Hollaway,* the defendant's complaint that photographs were inadmissible because they were not identified by the photographer was rejected. It was held that the foundation was sufficient where a police officer was present at the time the photographs were taken and testified that they accurately

portrayed what was depicted. Here the evidence was clear and undisputed as to the items taken in the robbery of Nigro's Supermarket. The foundation for the admission of the photographs in this particular case was substantial. Even if the provisions of the statute were not strictly complied with, the admission of the photographs could not have prejudiced the rights of the defendant.

The defendant also complains that the trial court erred in denying his motion for acquittal and in overruling his motion for a new trial, both motions being predicated on insufficiency of the evidence to support convictions under the various counts. Defendant argues that, because none of the victims or witnesses actually saw defendant Shoemake commit any of the crimes alleged, the evidence was insufficient to support the verdicts. In this case a rational factfinder could reasonably conclude that defendant participated in the taking of the two Ford Torinos, as the initial step in the plan to commit the Nigro robbery. A rational factfinder could also conclude that defendant's role in the plan was to drive the get-away car after Lucas committed the robbery and ditched the green Torino. When the sufficiency of the evidence is challenged on appellate review, the issue is whether, upon the record's evidence admitted at the trial, a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *State v. Henderson,* 226 Kan. 726, 603 P.2d 613 (1979). The evidence in this case was sufficient to allow a rational factfinder to conclude that the defendant Shoemake willfully and willingly aided and abetted Lucas in the commission of the felonies.

The defendant in his brief challenged the trial court's jurisdiction over the theft of the yellow Ford Torino because it was stolen originally in Kansas City, Missouri. K.S.A. 22-2610 provides the venue for prosecution of theft of property taken in another state and brought into Kansas to be in the county where found in this state. Here the yellow Torino, although taken in Missouri, was recovered in Wyandotte County and the charge was properly filed in the Wyandotte County District Court.

The defendant next complains that the trial court erred in failing to give requested lesser included offense instructions on simple robbery, criminal damage to property, and aiding a felon. In this case, the witnesses testified that Lucas threatened them with a pistol before taking the money from them. The use of the

pistol was undisputed and, hence, an instruction on simple robbery was not required. *State v. Prince,* 227 Kan. 137, 140-141, 605 P.2d 563 (1980). Furthermore, the trial court did not err in its failure to give an instruction on criminal damage to property under K.S.A. 1979 Supp. 21-3720. In *State v. Woods,* 214 Kan. 739, 744, 522 P.2d 967 (1974), this court stated:

"If a lesser offense is to be considered a lesser included offense under the law, all elements necessary to prove the lesser offense must be present and be required to establish the elements of the greater offense charged. If each is a separate and distinct offense, requiring proof of an element not necessary in the other, then neither can be a lesser degree of the other offense."

The criminal damage to property statute (K.S.A. 1979 Supp. 21-3720) requires a willful act of damaging or destroying property belonging to another. This element is not required under K.S.A. 1979 Supp. 21-3701, the theft statute. Under the circumstances, there was no duty to instruct on the offense of criminal damage to property because it is not a lesser included offense of the crime of theft. The defendant's contention that an instruction should have been given on aiding a felon, K.S.A. 21-3812, is also without merit. That offense has been held not to constitute a lesser included offense of aiding and abetting the commission of another crime. See *State v. Weigel,* 228 Kan. 194, 198, 612 P.2d 636 (1980), and *State v. Sully,* 219 Kan. 222, 228, 547 P.2d 344 (1976).

Defendant's next contention is that there was only one robbery committed at Nigro Supermarket and that the charges and convictions of three separate counts of robbery allowed multiple convictions for a single offense. The amended information in this case charged in substance in Count I that Lucas and Shoemake took property from the person or presence of Frederick Larison by force or threat while armed with a handgun. Count IV charged Lucas and Shoemake with taking property from the person or presence of Lee Trial by force or threat while armed with a handgun. Count V charged the codefendants with taking property from the person or presence of Michael Jones by force or threat while armed with a handgun. The undisputed evidence showed that the robber, Lucas, threatened the manager, Lee Trial, with a handgun and received from him the contents of a cash register and a money depository. The evidence further showed that, after being threatened with a gun, the other cashier, Frederick Larison,

delivered to Lucas money from his cash register. The evidence was undisputed that Michael Jones did not have money under his control to deliver to the robber and his only participation was in holding a sack while the property taken from the other employees was placed therein by Lucas to facilitate its transportation. Under these circumstances, we have concluded that the evidence was not sufficient to justify the conviction of defendant Shoemake for aggravated robbery of Michael Jones in a separate count, since no property was forcibly taken from him by Lucas. In *State v. Branch & Bussey,* 223 Kan. 381, 384, 573 P.2d 1041 (1978), it was held that robberies committed on the same occasion upon different persons may constitute separate crimes which will support separate charges and convictions. There the robbers, after forcing the victims to the floor, forced each of the victims to deliver his billfold to the robbers. Since property was forcibly taken separately from each of the victims, it was held that the charges were separate and not duplicitous and that the defendant could be convicted of separate counts of aggravated robbery as to each of the victims. In *State v. McQueen & Hardyway,* 224 Kan. 420, 430-31, 582 P.2d 251 (1978), it was held that multiple offenses could not be charged where only one person was robbed of items of property belonging to different persons. In that case, one conviction for aggravated robbery was set aside where the only victim was compelled at gunpoint to deliver property belonging to a supermarket and also a gun belonging to himself.

Where, in the course of the robbery of a business establishment, several employees are held at gunpoint and compelled by force to deliver to the robber property in the possession or custody of the employee, a separate and distinct aggravated robbery occurs with the taking of property from each victim. In the present case, property was taken from the manager, Lee Trial, and from the cashier, Frederick Larison, both of whom were custodians of store property. The forcible taking of such property from these employees constituted separate and distinct aggravated robberies which could be charged in separate counts. As noted above, no property was actually taken from Michael Jones. There being no property taken from Michael Jones, the defendant could not be charged with a separate and distinct crime of aggravated robbery involving that employee. We have concluded that the conviction of defendant on Count V, charging defendant

Shoemake with aggravated robbery of Michael Jones, must be set aside.

The defendant's final assignment of error is that the prosecuting attorney made improper and prejudicial statements during his closing argument. The trial court instructed the jury that the burden of proof was upon the State to prove each of the elements of each count beyond a reasonable doubt. In his closing argument, the prosecutor suggested to the jury that, if the jury should find Shoemake guilty to a reasonable certainty, that would be sufficient. In *State v. Winston,* 214 Kan. 525, 530, 520 P.2d 1204 (1974), this court held that an instruction defining reasonable doubt as "beyond a moral certainty sufficient to satisfy the reason" had no prejudicial effect upon defendant's substantive rights and was not reversible error. In this case, the trial court properly instructed the jury and we cannot say the prosecutor's statements exceeded the limits of fairness or were outside the considerable latitude allowed the prosecutor in arguing his case to the jury. *State v. Robinson,* 219 Kan. 218, 221, 547 P.2d 335 (1976).

For the reasons set forth above, the judgment of the district court is reversed as to the defendant's conviction on Count V charging aggravated robbery of Michael Jones. That conviction is set aside and the defendant is discharged therefrom. In all other respects, the judgment of the district court is affirmed.