ELDER, Judge,
with whom BENTON, and FRANK, JJ., join, dissenting.
Because I believe the evidence failed to prove that Phillip Clay (appellant) had the requisite intent to rob Vandegrift by taking Guise’s jacket, I respectfully dissent.
To constitute robbery, the act must be done with a specific criminal intent existing at the time of the commission of the act____ If the criminal intent did not exist when the alleged offense was committed, the crime has not been established. The intent subsequent to the taking is immaterial.
Jones v. Commonwealth, 172 Va. 615, 618-19, 1 S.E.2d 300, 301 (1939) (emphasis added). Further, in the language of the *263 majority, it must be the specific criminal intent that “actuates” the criminal act, in this case the taking. See Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 3.11, at 267-68 (2d ed. 1986). ‘When a criminal offense consists of an act and a particular [intent], both the act and [intent] are independent and necessary elements of the crime that the Commonwealth must prove beyond a reasonable doubt.” Hunter v. Commonwealth, 15 Va.App. 717, 721, 427 S.E.2d 197, 200 (1993) (en banc).
Proving intent by direct evidence is often impossible. See Servis v. Commonwealth, 6 Va.App. 507, 524, 371 S.E.2d 156, 165 (1988). Like any other element of a crime, it may be proved by circumstantial evidence, as long as such evidence excludes all reasonable hypotheses of innocence flowing from it. See Rice v. Commonwealth, 16 Va.App. 370, 372, 429 S.E.2d 879, 880 (1993). Circumstantial evidence of intent may include the conduct and statements of the alleged offender, and “[t]he finder of fact may infer that [he] intends the natural and probable consequences of his acts.” Campbell v. Commonwealth, 12 Va.App. 476, 484, 405 S.E.2d 1, 4 (1991) (en banc). In addition, whether an accused has knowledge of particular facts when he engages in certain conduct or a motive to engage in that conduct may be relevant in determining intent, even where knowledge and motive are not elements of the offense. See 1 Charles E. Friend, The Law of Evidence in Virginia § 12-6 (4th ed. 1993); see also Robinson v. Commonwealth, 228 Va. 554, 558, 322 S.E.2d 841, 843 (1984) (“‘[B]efore a fact or circumstance is admissible in evidence against a party to show motive, such fact or circumstance must be shown to have probably been known to him, otherwise it could not have influenced him, for a man cannot be influenced or moved to act by a fact or circumstance of which he is ignorant.’ ” (quoting Mullins v. Commonwealth, 113 Va. 787, 789-90, 75 S.E. 193, 195 (1912))).
Because robbery requires proof of a simple larceny in addition to other elements, see Graves v. Commonwealth, 21 Va.App. 161, 167, 462 S.E.2d 902, 905 (1995), aff'd on reh’g en banc, 22 Va.App. 262, 468 S.E.2d 710 (1996), principles of law *264 relevant to larceny find equal application here. Ordinarily, in proving a larceny, proof of “the wrongful taking of property in itself imports the animus Jurandi ” or the intent to steal, Skeeter v. Commonwealth, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977), and the fact finder “may infer the [criminal] intent from the immediate asportation and conversion of the property in the absence of satisfactory countervailing evidence by the ... [defendant],” Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 31 (1964). This principle is based on the inference, set out above, that one intends the natural and probable consequences of his acts.
However, under the facts of this case, I would hold that the inference of intent to steal that arises from the wrongful taking of property establishes only a single, wrongful intent co-existing with and actuating the taking. To hold that the taking of a single item from the actual possession of a single victim — which item, unbeknownst to the robber, happens to contain property that is owned by some other person present at the scene and that remains constructively in that other person’s possession — also implies the animus fwrandi to support a second robbery conviction would improperly relieve the Commonwealth of its burden of proving that intent to steal from the second victim actuated the taking from the first.[1]
*265 Here, the record contains no evidence permitting the inference that appellant intended to take property belonging to more than one person by the single act of taking Guise’s jacket. The evidence showed that appellant and Darton had discussed obtaining money from Guise and Vandegrift before approaching them on the street and that Darton patted Vandegrift down while appellant held both victims at gunpoint, permitting the inference that appellant and Darton may have intended to rob Vandegrift directly.[2] However, the pat-down of Vandegrift yielded nothing. Although Vandegrift retained constructive possession of the money, it was in Guise’s actual possession, inside his coat, at the time of the taking. Therefore, the mere fact of its taking does not permit the inference that appellant intended to rob Vandegrift by taking Guise’s jacket. Evidence that appellant knew Vandegrift’s property was in Guise’s jacket may have supported the inference that appellant intended to rob Vandegrift as well as Guise when he took Guise’s jacket. However, the record here is devoid of any evidence that appellant had such knowledge. Therefore, I believe the evidence is insufficient to prove appellant intended to rob Vandegrift when he took Guise’s jacket.
Such a result does not conflict with our holdings in Jordan v. Commonwealth, 2 Va.App. 590, 347 S.E.2d 152 (1986), and Sullivan v. Commonwealth, 16 Va.App. 844, 433 S.E.2d 508 (1993) (en banc). As we held in Jordan, “the appropriate ‘unit of prosecution’ is determined by the number of persons *266 from whose possession property is taken separately by force or intimidation.” 2 Va.App. at 596, 347 S.E.2d at 156 (emphasis added) (analyzing whether actions of accused constituted one robbery or two for purposes of resolving double jeopardy challenge). In Jordan, we upheld the two robbery convictions of the accused because, although he took money belonging to only one entity — a fast-food restaurant — he used threats to obtain separate quantities of the restaurant’s money from two different employees. See id. at 597, 347 S.E.2d at 156. Jordan forced one employee to “turn over the money in a cash register” and another employee to “turn over [the restaurant’s] money from [the employee’s] pockets.” Id. Under the facts of that case, we held that “the evidence clearly show[ed] that both employees were subjected to the threat of violence by the presenting of firearms as money was taken from each of them.” Id. (emphasis added).
In Sullivan, we rejected a double jeopardy challenge to dual robbery convictions where the accused robbed two video store employees. Although only one employee actually “physically surrendered” the money, both employees “were custodians of the store’s money and jointly possessed it,” and the accused forced both “to assist in the collection and surrender of the money.” 16 Va.App. at 848, 433 S.E.2d at 510.
Because Jordan involved two actual takings of money from two individuals with a superior claim of right to the money through the use of violence or intimidation, the evidence proved that the accused intended two takings, even though the money belonged to a single entity. Likewise, we held in Sullivan that the evidence was sufficient to prove the accused intended two robberies and accomplished two takings, even though only one employee actually “physically surrendered” the money. The accused had constructive knowledge that the two video store employees had a superior claim of right to their employer’s money, and he forced one employee to help the second employee gather the store’s money from various locations. In appellant’s case, in contrast to Jordan and Sullivan, the evidence was insufficient to prove a second *267 robbery because it did not prove appellant intended to take any of Vandegrift’s property by the act of taking Guise’s coat.
For these reasons, I would reverse appellant’s convictions for robbing Vandegrift and for using a firearm in the commission of that robbery.

. The majority focuses on the fact that appellant clearly had the intent to rob both men and that he had not yet abandoned that intent when he took Guise’s jacket. However, as the majority itself explains, the mere concurrence of the intent and the act is not sufficient. It ordinarily is true that where the mental state has been abandoned, it cannot "actuate [subsequent] physical conduct.” LaFave & Scott, supra, at 270. However,
this may also be true when the mental state has not been abandoned. Assuming again that A forms an intent to kill B, but now that he has not abandoned that intent, and that he accidentally runs over B and kills him, the result still should be that there is no concurrence of the mental and physical elements. This is because "[A’s] moving and steering of his car were not done in order to give effect to desire to kill [B].”
Id. (emphases added). In appellant’s case, the evidence supports the finding that he still had the intent to rob Vandegrift when he took Guise’s jacket, but “his [taking of the jacket from Guise] [was] not done in order to give effect to his desire to [rob Vandegrift].” Id.

. The evidence may have been sufficient to prove attempted robbery of Vandegrift. An attempt consists of the intent to commit the crime and the doing of some direct, ineffectual act toward the commission of the offense. See Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978). Here, the fact finder may have been presented with ample evidence of appellant’s intent to rob Vandegrift at the time Vandegrift was first confronted by the two men. The act of patting down Vandegrift may have provided sufficient evidence of a direct, ineffectual act toward the commission of the robbery of Vandegrift. However, the evidence fails to show that appellant intended to rob Vandegrift when he took Guise’s jacket or, in the words of the majority, that appellant’s intent to steal from Vandegrift "actuated” the taking of Guise’s jacket. Rather, the evidence shows only that intent to steal from Guise actuated the taking of the jacket.