COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bumgardner and Frank
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                      MEMORANDUM OPINION* BY
v.    Record No. 1915-99-4           JUDGE ROBERT P. FRANK
                                          FEBRUARY 15, 2000
GEORGE BALL, JR., S/K/A
 GEORGE A. BALL, JR.


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                    Richard B. Potter, Jr., Judge

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellant.

            Robert F. Horan, III (Hart & Horan, P.C., on
            brief), for appellee.


     The Commonwealth of Virginia (appellant) appeals the

suppression of the statement made by George Ball, Jr. (appellee)

to Detective McClelland of the Prince William County Police

Department.  On appeal, appellant contends that the trial court

erred in ruling that appellee's Fifth Amendment right to counsel

was violated by continued interrogation after the invocation of

his rights.  We agree and reverse the ruling of the trial court

and remand for a trial consistent with this opinion.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

I.  BACKGROUND

Appellee's hand was injured during an incident with police on February 24, 1999.  He was taken to a hospital for surgery on the injured hand.  The next day, appellee was interviewed in the hospital about the incident by Detective McClelland of the Prince William County Police Department.  After Detective McClelland advised appellee of his <u>Miranda</u> rights, the following exchange occurred:

[Appellee]:  I'd rather have my lawyer.
             Cause I'm not . . . I'm not
             really.

McClelland:  Okay.

[Appellee]:  I'm on medication.  I don't
             . . .

McClelland:  I-I understand that Mr. Ball.
             All right.  Uh.

[Appellee]:  What have I been charged with?

McClelland:  You've been charged with
             Attempt Capital Murder
             (overriding conversation) . . .

[Appellee]:  Attempt Capital Murder
             (overriding conversation) . . .

McClelland:  . . . and Malicious Wounding.

[Appellee]:  Attempt Capital Murder?

McClelland:  Right.

[Appellee]:  And what is that?

McClelland:  That's for trying to get the
             officer's gun and what else are
             you going to do with it, the
             gun, if you're trying to

-

```
                          take . . . if you're trying to
                          get it?

        [Appellee]:       I wasn't trying to get to an
                          officer's gun.  I could have
                          grabbed.

        McClelland:       Well, that's what I need to
                          talk to you about.

        [Appellee]:       Then I'll talk to you without a
                          lawyer.[1]

        McClelland:       Do what?

        [Appellee]:       I said, I'll talk to you
                          without a lawyer.

        McClelland:       You will talk to me without a
                          lawyer?

        [Appellee]:       Yes.
```

At a suppression hearing, the trial judge ruled that
appellee's statement to McClelland was voluntary but should be
suppressed because the interrogation continued after appellee
invoked his Fifth Amendment right to counsel.

## II.  ANALYSIS

> In order to insure that the Fifth Amendment
> right against compulsory self-incrimination
> is protected during the custodial
> interrogation of criminal suspects, the
> United States Supreme Court established a
> series of "procedural safeguards" that law
> enforcement authorities must adhere to when
> interviewing suspects in their custody.  See
> Davis v. United States, 512 U.S. 452, 457,

---

[1] While appellee argued at the suppression hearing that he
stated that he would talk "about" a lawyer, not "without" a
lawyer, the trial court, as trier of fact, ruled that the
statement was, "Then I'll talk to you without a lawyer."  We,
therefore, accept the trial court's finding as one of historical
fact.

-

114 S. Ct. 2350, 2354, 129 L.Ed.2d 362 (1994) (citing Michigan v. Tucker, 417 U.S. 433, 443-44, 94 S. Ct. 2357, 2363-64, 41 L.Ed.2d 182 (1974)); see also Mier v. Commonwealth, 12 Va. App. 827, 831, 407 S.E.2d 342, 344-45 (1991). Compliance with these procedures is a "prerequisite[ ] to the admissibility of any statement made by a defendant" during custodial interrogation. Miranda[v. Arizona], 384 U.S. [436,] 476, 86 S. Ct. [1602,] 1629 [, 16 L.Ed.2d 694 (1966)]; see also Goodwin v. Commonwealth, 3 Va. App. 249, 252, 349 S.E.2d 161, 163 (1986).

Quinn v. Commonwealth, 25 Va. App. 702, 709-10, 492 S.E.2d 470, 474 (1997).

In order to "prevent police from badgering a defendant into waiving his previously asserted Miranda rights" and to "protect the suspect's 'desire to deal with the police only through counsel,'" the United States Supreme Court established the "Edwards rule" as a "second layer of prophylaxis for the Miranda right to counsel." See Davis, 512 U.S. at 458, 114 S. Ct. at 2355; McNeil v. Wisconsin, 501 U.S. 171, 176, 178, 111 S. Ct. 2204, 2208, 2209, 115 L.Ed.2d 158 (1991); Michigan v. Harvey, 494 U.S. 344, 350, 110 S. Ct. 1176, 1180, 108 L.Ed.2d 293 (1990).

Id. at 710-11, 492 S.E.2d at 474-75.

Under Edwards v. Arizona, 451 U.S. 477 (1981), "once the defendant invokes his Miranda right to counsel, all police-initiated interrogation regarding any criminal investigation must cease unless the defendant's counsel is present at the time of questioning." Quinn, 25 Va. App. at 711, 492 S.E.2d at 475 (citations omitted).

-

The determination of inadmissibility under Edwards involves application of a three-part test.  See id. at 712, 492 S.E.2d at 475.

> First, the trial court "must determine whether the accused actually invoked his right to counsel" and whether the defendant remained in continuous custody from the time he or she invoked this right to the time of the statement.  Second, if the accused has invoked his or her right to counsel and has remained in continuous custody, the statement is inadmissible unless the trial court finds that the statement was made at a meeting with the police that was initiated by the defendant or attended by his lawyer. Third, if the first two parts of the inquiry are met, the trial court may admit the statement if it determines that the defendant thereafter "knowingly and intelligently waived the right he had invoked."

Id. at 712, 492 S.E.2d at 475 (citations omitted).

> In reviewing the trial court's [grant] of the motion to suppress, we view the evidence in the light most favorable to the [prevailing party], granting to it all reasonable inferences deducible therefrom. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).  Although we review the trial court's findings of historical fact only for "clear error," we review de novo the trial court's application of defined legal standards to the facts of the case.  See id.  Whether the defendant invoked his or her right to counsel, and thereafter knowingly and voluntarily waived that right, requires that we apply defined legal standards to the historical facts. See Quinn, 25 Va. App. at 712-13, 492 S.E.2d at 475-76.

Giles v. Commonwealth, 28 Va. App. 527, 532-33, 507 S.E.2d 102, 105 (1998).

-

Although hospitalized, appellee was charged with attempted capital murder and malicious wounding and was under guard by law enforcement officers.  After receiving Miranda warnings from Detective McClelland, appellee stated, "I'd rather have my lawyer."  Under the first prong of the Edwards test, we find that appellee invoked his right to counsel while in police custody.

Next, we address whether appellee initiated the incriminating discussion with Detective McClelland.  Under the Edwards test, appellee remained in constant custody and did not have his lawyer present during his discussion with Detective McClelland.  Therefore, in order for the statement to be admissible, appellee must have initiated the conversation with McClelland.

The trial court ruled that the statement was inadmissible because a defendant cannot reinitiate discussion with the police unless there is a break in the defendant's contact with the police.  We find no authority to support the trial court's ruling nor did appellee cite any.

In Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983), the United States Supreme Court held that the defendant, who had previously invoked his right to counsel, initiated further conversation with the police by asking, "'Well, what is going to happen to me now?'"  The Court wrote:

-

> While we doubt that it would be desirable to build a superstructure of legal refinements around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation in the sense in which that word was used in Edwards.

Id. The Court, however, held that the defendant's question "evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship." Id. at 1045-46. The Court did not articulate any requirement that there be a passage of time between the invocation of the right to counsel and the defendant's initiation of conversation with the police.

In Giles, 28 Va. App. 527, 507 S.E.2d 102, we held that the defendant, who had previously invoked his right to counsel, initiated conversation with the police during booking procedures by indicating that he was confused and did not understand the charge against him. We reasoned that the defendant's statements that he was confused and did not understand and then his

-

surprise at being charged with robbery "fairly constituted an invitation for Officer Royer to discuss with [the defendant] his situation."  Id. at 535, 507 S.E.2d at 106.  We further stated that the defendant's comments "were not necessary inquiries incidental to the booking and custodial relationship."  Id.  It is significant to note that the defendant in Giles invoked his right to counsel, the police terminated the interview, and the booking procedures, during which the defendant initiated the conversation, began immediately thereafter.

We find no support for the trial's court ruling that a period of time must elapse before a defendant, who had previously invoked his right to counsel, can initiate further conversation with the police.  Instead, both federal and Virginia cases hold that statements by a defendant that indicate a willingness and a desire for a generalized discussion about the investigation are sufficient to initiate conversation with the police under Edwards.

In this case, appellee invoked his right to counsel whereupon the police cease interrogation.  Appellee then immediately asked, "What have I been charged with?"  We find that appellee's question was not a necessary inquiry of the custodial relationship.  As in Giles, appellee's question "fairly constituted an invitation" for Detective McClelland to discuss appellee's situation.  Further, once Detective McClelland told appellee that he was charged with attempted

-

murder, appellee asked, "And what is that?"  Appellee's request for explanation cannot be characterized as anything other than a generalized discussion about the investigation.

The trial court found that appellee's waiver was voluntary, so we do not address the third prong of the <u>Edwards</u> test.

We, therefore, reverse the ruling of the trial court that appellee's statements to Detective McClelland did not constitute initiation of conversation because a period of time did not separate the statements from appellee's invocation of the right to counsel.  We, therefore, find that appellee initiated a conversation with Detective McClelland during which he made incriminating statements and that the waiver of his right to counsel was voluntary.  Appellee's statements to Detective McClelland are, therefore, admissible as evidence in a trial consistent with this opinion.

<u>Reversed and remanded.</u>

-