Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Carrico, S.J.

GERALD LORENZO ANDERSON

OPINION BY
v. Record No. 090738                    JUSTICE LAWRENCE L. KOONTZ, JR.
                                         January 15, 2010
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider the denial of a defendant's motion to suppress the statements he made to the police before and after being advised of his rights under Miranda v. Arizona, 384 U.S. 436, 474-75 (1966). The principal issue we consider is whether the public safety exception to the Miranda rule, recognized in New York v. Quarles, 467 U.S. 649, 658-59 (1984), applies under the particular circumstances of this case to the defendant's response to a police officer's question whether a gun was loaded.

BACKGROUND

The material facts are not in dispute. On January 31, 2007, Officer Dean Waite of the Richmond City Police Department was working off-duty at a private apartment complex. The apartment complex employed Officer Waite to enforce its "no trespassing" policy to ensure that only residents and those who have reason to be on the property are present. Officer Waite was dressed in his police uniform, wearing a police badge, and carrying a weapon.

At approximately 4:00 p.m., while patrolling the apartment complex in his police vehicle, Officer Waite saw Gerald Lorenzo Anderson standing near an automobile with a woman inside it. Because he did not recognize Anderson or the woman as residents of the apartment complex, Officer Waite approached the automobile to investigate a possible trespass.

As Officer Waite drove near, Anderson walked away from the automobile. When Officer Waite exited his vehicle, Anderson looked at him. Officer Waite said to Anderson, "[S]ir, I need to talk to you." Anderson continued to walk away from him. After Anderson looked back a second time, Officer Waite said to him, "[D]on't do it." At that point, Anderson "took off running."

Officer Waite gave chase and yelled two times, "[P]olice, stop." Anderson fell twice during the chase. After the second fall, Anderson stood up, turned and faced Officer Waite, and put his left hand in the left front pocket of his pants. Anderson then threw a "silverish, grayish object," hitting a tree behind him and landing about five or six feet away.

Anderson lay down on his back, and at Officer Waite's direction, rolled over on his stomach. As he was on top of Anderson handcuffing him, Officer Waite looked over to where the object had landed and saw a "silverish, gray revolver."

2

Officer Waite rolled Anderson over, brushed the grass off of him, "leaned over," and asked, "Is it loaded?" Anderson replied, "[Y]eah, there can be one in it."

Officer Waite retrieved the gun, a .38 caliber revolver, and put it in his pocket without unloading it. Officer Waite then walked Anderson back to his vehicle. As they approached the vehicle, Officer Waite's "backup" officer, Officer Jason Reece, arrived. Officer Waite handed the gun to Officer Reece, who unloaded it.

Officer Reece conducted a computer background check to determine whether the gun was stolen and whether Anderson was a convicted felon. After learning that Anderson was a convicted felon, Officer Waite arrested him and advised him of his Miranda rights. Officer Waite then asked Anderson where he got the gun. Anderson replied that he had been shot at two weeks prior and that he obtained the gun from his uncle for protection.

Anderson was indicted for possession of a firearm by a convicted felon in violation of Code § 18.2-308.2. Anderson subsequently filed a motion to suppress the statements he made about the gun. At the suppression hearing, Anderson argued that his initial statement about the gun was obtained in violation of the Fifth Amendment because he was "in custody" and interrogated without first being advised of his Miranda

3

rights.  Anderson also argued that, pursuant to Missouri v. Seibert, 542 U.S. 600, 615-16 (2004), his subsequent statements about the gun should also be excluded.

The trial court denied the motion to suppress, finding that when Officer Waite handcuffed Anderson, he was in "investigatory detention," not custody, and therefore, Anderson's initial statement that the gun was loaded was not obtained in violation of the Fifth Amendment.  The court further found that Anderson's subsequent statements about his possession of the gun were not illegally obtained because Anderson was advised of his Miranda rights prior to giving those statements.

On motion to rehear the suppression issue, Anderson again asserted that he was "in custody" for purposes of Miranda at the time he answered Officer Waite's question about whether the gun was loaded.  Accordingly, pursuant to Seibert, he maintained that his statements made both before and after he was given the Miranda warnings should be suppressed.  Anderson also asserted that the public safety exception to the Miranda rule recognized in Quarles did not apply to this case because Officer Waite knew the location of the gun and should have assumed that it was loaded.

The trial court denied relief under Anderson's motion to rehear, ruling that the first statement "comes in" under the

4

public safety exception to the Miranda rule.  Additionally, the court found that because Anderson had been advised of his Miranda rights, his second statements about the gun "come[] in as well."

Anderson entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress.  See Code § 19.2-254.  The trial court accepted Anderson's plea, found him guilty of possession of a firearm by a convicted felon in violation of Code § 18.2-308.2, and sentenced him to four years imprisonment with two years suspended.

The Court of Appeals, in an unpublished opinion, affirmed the trial court's denial of Anderson's motion to suppress.  Anderson v. Commonwealth, Record No. 2182-07-2, slip op. at 6 (Mar. 17, 2009).  The Court concluded that it need not decide whether Anderson was "in custody" for purposes of Miranda.  Instead, the Court held that the public safety exception to the Miranda rule recognized in Quarles permitted admission of Anderson's response to Officer Waite's question of whether the gun was loaded.  Id., slip op. at 3-4.  The Court also held that, because Miranda warnings were not required prior to Officer Waite's initial question about the gun, "the failure to give them could not taint the statements [Anderson] made after [he] received the warnings."  Id.,

5

slip op. at 5.  Accordingly, the Court affirmed

Anderson's conviction.  We awarded Anderson this appeal.

DISCUSSION

The applicable standard of appellate review is well

established.  When reviewing a trial court's denial of a

defendant's motion to suppress, we review the evidence in the

light most favorable to the Commonwealth, according it the

benefit of all reasonable inferences fairly deducible from the

evidence.  Hasan v. Commonwealth, 276 Va. 674, 679, 667 S.E.2d

568, 571 (2008).  The defendant bears the burden of

establishing that the denial of his suppression motion was

reversible error.  Id.

The Fifth Amendment to the United States Constitution

guarantees that "[no] person . . . shall be compelled in any

criminal case to be a witness against himself."  In Miranda,

the United States Supreme Court extended the Fifth Amendment

privilege against self-incrimination to individuals subjected

to custodial interrogation by the police.  384 U.S. at 478-79.

"Under Miranda, before a suspect in police custody may be

questioned by law enforcement officers, the suspect must be

warned that he has a right to remain silent, that any

statement he makes may be used as evidence against him, and

that he has a right to have an attorney, either retained or

appointed, present to assist him."  Dixon v. Commonwealth, 270

6

Va. 34, 39, 613 S.E.2d 398, 400 (2005). The failure to give Miranda warnings prior to custodial interrogation violates an individual's constitutional rights under the Fifth Amendment; therefore, "[s]tatements obtained by law enforcement officers in violation of [the Miranda] rule generally will be subject to exclusion for most proof purposes in a criminal trial." Id. One "narrow exception" to the Miranda rule, however, is the public safety exception. Quarles, 467 U.S. at 658.

In Quarles, a woman reported to police that a man with a gun had raped her and entered a grocery store. Id. at 651-52. Officers located the man in the store and, while frisking him, discovered that he wore an empty shoulder holster. Id. at 652. After handcuffing the man, and without giving him Miranda warnings, an officer asked him where the gun was located. Id. The man nodded toward some empty cartons and responded, "the gun is over there." Id.

The United States Supreme Court held "that on these facts there is a 'public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence." Id. at 655. The Court recognized that the "need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege

7

against self-incrimination." Id. at 657.  As the Court explained:

> We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the Miranda warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.

Id. at 657-58.  The Court also noted that this "exception does not depend upon the motivation of the individual officers involved," but rather an officer's "objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon."  Id. at 656, 659 n.8.

Anderson contends that both the circuit court and the Court of Appeals overextended the public safety exception to the Miranda rule by permitting the admission in evidence his response to Officer Waite's question of whether the gun was loaded.  According to Anderson, the public safety exception applies to questions where there is a need to determine the location of a gun, not to determine whether a gun is loaded. Because Officer Waite knew the location of the gun, Anderson contends that Officer Waite did not have an "objectively reasonable need" to know whether the gun was loaded in order to protect the public or himself.  Finally, Anderson contends

8

that his statements regarding how and why he obtained the gun, made after being given Miranda warnings, should have been suppressed because they were derivative of the statement he made about the gun without the benefit of Miranda warnings.

The Commonwealth responds that Anderson was not "in custody" at the time Officer Waite asked him whether the gun was loaded and, therefore, Miranda warnings were not required. Nevertheless, the Commonwealth asserts that even if Anderson were "in custody," the public safety exception to the Miranda rule applies. In either event, the Commonwealth maintains that Anderson's subsequent statements made after he received the Miranda warnings, should not be suppressed.

Assuming, without deciding, that Anderson was "in custody" when Officer Waite asked him whether the gun was loaded, we hold that Officer Waite's question was "objectively reasonable" to protect the public and himself from the danger associated with the gun and, thus, the public safety exception to the Miranda rule applies. We recognize that the "prototypical example" for application of the public safety exception is the situation, as in Quarles, of a missing weapon. See United States v. Day, 590 F. Supp. 2d 796, 804 (E.D. Va. 2008). Nonetheless, nothing in Quarles, limits the application of the public safety exception to questions about the location of a missing weapon. Rather, we are of opinion

9

that the application of the public safety exception is to be determined by the particular circumstances surrounding the need for a police officer to ask questions to protect the safety of the public and the officer.

As the United States Supreme Court stated:

> The exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it. We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect.

Quarles, 467 U.S. at 658-59. "The facts of this case clearly demonstrate that distinction and an officer's ability to recognize it." Id. at 659. Officer Waite secured Anderson some distance from any backup support. Meanwhile, the gun lay five to six feet away, in a public area during the afternoon, with the danger that if loaded someone "might later come upon it." Id. at 657. These circumstances do not suggest that Officer Waite asked Anderson whether the gun was loaded in order to "elicit testimonial evidence." Rather, these circumstances suggest that an "objectively reasonable" police officer in Officer Waite's position would "instinctively" need to know whether the gun was loaded in order to determine how quickly to retrieve the gun and "neutralize the volatile situation confronting [him]." Id. at 658-59 n.8. It was only

10

after arresting Anderson and advising him of his Miranda rights that Officer Waite continued with investigatory questions about Anderson's possession of the gun.

Thus, we conclude that the public safety exception to the Miranda rule permitted the admission of Anderson's response to Officer Waite's question whether the gun was loaded. Furthermore, because Miranda warnings were not required under the public safety exception, we conclude that the failure to administer them did not taint Anderson's subsequent statements after he was advised of his Miranda rights. Accordingly, the Court of Appeals did not err in upholding the circuit court's denial of Anderson's motion to suppress any of his statements to the police.

CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals upholding the circuit court's denial of Anderson's motion to suppress his statements to the police and affirming his conviction for a violation of Code § 18.2-308.2.[*]

Affirmed.

---

[*]In light of our resolution of this appeal on the public safety exception issue, we need not address the remaining issues raised.